Okay, when you're ready. May I please the court. Matthew Liebman of the Animal Legal Defense Fund on behalf of the appellant. I'm joined by Daniel Waltz at the council table. I'd like to reserve three minutes of rebuttal if I may. This case presents the question of whether the Freedom of Information Act requires the USDA to expedite the production of records when doing so could save the life of an animal. Right, and the question is what's the meaning of the word individual? That's right, that's right. So the specific question is whether the word individual is used in that provision must be limited to human beings or whether it should be construed to include non-human animals. And the animal at the center of this case, Tony the tiger, was unquestionably an individual. His life and physical safety were important not only to the Animal Legal Defense Fund. But if he was an individual animal, the question is whether he was an individual within the meaning of the statute. That's right, that's right. And, of course, in interpreting a term in a statute that lacks a definition, the court looks to the plain language or the common usage of that word. And in this case, we cite numerous examples. Maybe, but also if it has an accepted meaning, legal meaning, or at least a legal meaning within the federal codes, that may be more influential. I mean, there's no doubt that the term individual can be used for an animal, especially within biology, within environmental law, and so on. But within the U.S. code, there are several definitions where it seems directly related. It's not a definition of individual, it's a definition of person. But person includes an individual, and there they certainly mean a human being, right? That is the case. And that appears several different times in the U.S. code. Right. Where it doesn't appear— I'm sorry? I was going to say where it doesn't appear is in the Freedom of Information Act, which lacks a definition of— the word person includes corporations, companies, associations, firm partnerships, societies, and joint stock companies, as well as individuals. That's right, Your Honor, and that's in the Dictionary Act. And it may be that for purposes of the Dictionary Act, that defines the word person. The Dictionary Act is defining any act of Congress. That's some clue to the fact that there's an equation between a person and an individual. Well— For purposes of the U.S. code, not for the world at large. Right. Well, what the Dictionary Act says as a predicate is that unless context dictates otherwise. And here we have a statute where the word individual is surrounded by terms, life and physical safety, that are characteristics that exceed— I'm sorry? Life and physical safety, which are the words in the expedited processing provision. So the kinds of individuals for whom the protection matters are those who have life and physical safety. And animals are unquestionably, as far as Congress is concerned, the kinds of individuals with life and physical safety. And so in the context of the Freedom of Information Act, a narrow reading of the word individual would be inconsistent with the congressional intent under the general federal regulatory scheme as it pertains to animals. What do you have about congressional intent other than the word individual? Meaning, it seems to me entirely plausible to read the statute as requiring expedited processing when the life or safety of individual human beings is at issue, but not to have the same urgency with respect to processing when the life or physical safety of animals is concerned. I mean, you may not agree with the distinction, of course, but that's a rational distinction. And do you have anything beyond the word individual that tells us that the distinction between humans and animals is not drawn by the statute? Well, the statute is silent on that specific question, but we do know that Congress does in fact value the life and physical safety of animals, especially ones like Tony the Tiger, who— The Department of Agriculture is charged with protecting the safety of animals. That's right. There wouldn't be records to request in the first place if there wasn't a regulatory scheme under the Animal Welfare Act that says— The question is the degree of protection, and the question more narrowly here is whether or not the Freedom of Information Act has been enlisted in that protection. That's right. And it's perfectly reasonable to assume that if Congress cared enough about animals on the brink of extinction, including tigers like Tony, that it would protect them against takes under the Endangered Species Act. If it cared enough about exhibited animals to create the federal regulatory scheme under the Animal Welfare Act, that it would want, in cases where those animals' life and physical safety is threatened, to allow those requests to be expedited. Had it wanted to restrict this term to strictly humans or natural persons, it could have used that term. Instead, it used the word individual, which according to the rule of statutory construction, that it be construed according to its common meaning, and given that we cite numerous examples of its common meaning applying to non-human animals. The examples you give typically are the individual animal, or there's a group and this individual animal, but the word individual used all by itself typically refers to human beings. That's not the case, Your Honor. Certainly it's used both in an adjectival form, so the individual chimpanzee, but it's also used in the noun form. When we're talking about individual and we're referring to an animal, it'll be, well, we had a herd of elephants, and this individual moved away from the herd. That tends to be the usage when it's used as a noun, if we're using it as referring to an animal. Sometimes, yes, but I don't think that takes it out of the protection of the Freedom of Information Act. That's intentional. I mean, if you were a biologist and you were, you know, studying tigers, you wouldn't say, you know, you would just use the term individual whenever you described it without modifying it by tiger or whatever, but the U.S. Code isn't particularly addressed to biologists. That's the problem. Well, I don't think it's limited to biologists, Your Honor, and we give examples from the dictionary. We give examples from periodicals that are some biological but some sort of normal popular media. We give examples of the courts using that term, the Supreme Court in 1897. I mean, I think your point is fairly solid except for the fact that there are, that in the U.S. Code, there seems to be both a definition and a consistency about the use of the term. Well, I don't know that there is a consistency. I mean, individual means many different things in many different contexts for purposes of— So is there any context in the U.S. Code anywhere that you would say that this obviously means an animal? I wonder. I wonder for—I don't know. I haven't looked, for example, at the Endangered Species Act, and the one thing that I thought of is the taking part of the Endangered Species Act. I don't know what term that uses in terms of when you have to justify the taking of an individual animal. I don't know. Yeah, and— I presume you've looked at that, and you would have used it if it existed. I don't know. I don't know off the top of my head what the operative term is there. I don't think it's determinative. I will say that, you know, many of the cases that we cite where courts are using individual as a noun to refer to animals are Endangered Species Act cases. And, in fact, I think the Supreme Court has even— Are Endangered Species Act cases. Yeah. We'll refer to the individual in reference to a particular endangered animal. But then it's contemporary. It is. It is. If, for example, this usage were within the Protection of Animal Act, you would be on firmer ground, it seems to me. But it's not. It's in a generic usage. It is, which is why we sort of look to if Congress— You know, the Freedom of Information Act pertains to records collected under all sorts of statutes. So it may be that in creating an expedited processing provision, Congress was concerned with all of those individuals that it protects through various statutory schemes. And so because one of those statutory schemes is the Animal Welfare Act, another one is the Endangered Species Act, those are the kinds of recognized interests that Congress intended to protect. And, in fact, the House report refers to the expedited processing provision as aimed at avoiding negative consequences to recognized interests. And here it's undisputable that animals do have recognized interests under federal law through the Endangered Species Act and the Animal Welfare Act. And to go back to your point, Judge Berzon, about other instances in which individuals seem to exclude animals within the federal code, again, it's not unusual for the same word to have different meanings in different statutes. The word individual might include corporations for purposes of the Line Item Veto Act, but exclude corporations for purposes of the Torture Victim Protection Act. Yes, but given the Dictionary Act, you do have a burden to demonstrate that the context indicates otherwise. Only if the Dictionary Act defined individual. Well, it does. I mean, it equates persons and individuals. So, in effect, it defines individuals. It doesn't say an individual means, but it says it means the same thing as a person. Yes and no. I mean, I don't know of any case in which the court has used, has sort of reverse engineered a definition through the Dictionary Act. I mean, the Dictionary Act says these are the words that are used in the federal code have this meaning. But I think it would be quite reasonable to say that for purposes of the Dictionary Act, individual excludes animals because to construe it that way would lead to absurd results. Most of the times when the word person is used in statutes, it's conferring a procedural right on someone to initiate a lawsuit. And, of course, this court has held that unless Congress is explicit about conferring a right on animals to sue, we're not going to presume that that's the case. But that's far away from what this case is about. So, you know, whereas interpreting individual to confer personhood rights on animals could lead to absurd results for purposes of, say, the APA. Is there a history besides this reference to protected interest that suggests that individuals intended to be inclusive with respect to animals? There's nothing substantive at all about which kinds of interests are intended to be protected here. So that's why I think it makes sense to look at it against the backdrop of all of the federal statutes for which records are created that FOIA is intended to give access to on an expedited basis. And, of course, where an animal's life hangs in the balance, if expedited processing means, you know, that animal gets saved, that's completely consistent with what Congress intended throughout the federal regulatory scheme. I think I'll reserve the balance of my time for rebuttal. Let's hear from the other side. Thank you. You'll get a chance to respond. Thank you. May it please the Court. I'm John Capel from the Appellate Staff, Civil Division Department of Justice, and I'm representing the Appalachian Department of Agriculture and the Animal and Plant Health Inspection Service. I really have very little to add to our briefs, the district court opinion, and the colloquy between the court and opposing counsel. There is simply no support in the FOIA itself or, for that matter, in any other federal statute that plaintiffs have identified for this definition of individual as including non-human beings. Frankly, I don't really ‑‑ I'm prepared to answer any questions that the court may have. The same phrase is used in Exception 7 of FOIA, right? Yes. And therefore, as I understand it, the government, if the information that was requested would endanger the life or physical safety of a police dog or another animal used by law enforcement, that would not be within Exemption 7-F. Yes, Your Honor. That would not be within ‑‑ Exemption 7-F, like this provision, is limited to human beings in the government's view. And that also is supported by the history of Exemption 7-F and the revision in the 1986 revision where Congress changed the language from law enforcement personnel to individual in order to encompass other human beings. I could argue in the other direction, right? Excuse me? I could argue in the other direction, i.e., they didn't want it to be personnel. They wanted it to be ‑‑ Well, but there's no indication in the legislative history of that that they were thinking about. Anything other than other human beings. For instance, family members of ‑‑ Had this whole incident not happened, I wouldn't have been at all surprised to have the government come and say that they're not going to give out the information because, you know, police dog so and so is going to be endangered. Well, Your Honor, that certainly would ‑‑ I don't believe that's the case. I think that the government would take the consistent position that it does not apply, that 7-F does not apply to nonhuman beings, that it is also limited to natural persons and it would not try to withhold information regarding police dogs, say, under that provision. Is the issue of the meaning and scope of the word individual in FOIA addressed anywhere in the DOJ regulations or any other government directive that you know of? The definition of individual? No, Your Honor, I'm not aware of anything in the FOIA guidelines that specifically ‑‑ Or in the history of the treatment of that word. Or in the history ‑‑ Under FOIA. No, Your Honor, I believe we've identified everything that we've found that's relevant in our brief with respect to both the statutory language and the legislative history of FOIA. But there is nothing, the plaintiffs have not identified anything in the FOIA or in any other federal statute that supports their view. And I would also note that in a case like this court's cetacean community case, which was under the APA and involved the definition of person, there the court held that person does not include animals. And so looking at the history, the language of the statute, the ordinary meaning, the statutory text and context, the legislative history, and the case law, in particular the Supreme Court's decision in the Mohammed case, which admittedly involved individual in a different context under the Torture Victims Protection Act. But there they held that it did not apply to nonhuman individuals, in that case a corporation. But there's no basis for distinguishing corporations or other entities with respect to individual either in that statute or in this statute. So there is no support for the plaintiff's argument here, and I would respectfully urge the court to affirm the decision. Do you happen to know what language the Endangered Species Act uses with regard to takes and incidental take permits and so on? I don't know. I don't know either, Your Honor. Of course, I'm a civil attorney rather than an environmental attorney. But I do note that in cetacean community this court also held that person, that it applied with respect to both the APA and the Endangered Species Act. In fact, the court rejected the notion that the term person, that it covered animals under either the APA or the Endangered Species Act. I understand that. But person is very different from individual. Yes, Your Honor. I recognize that. On a plain words notion about common language, it's not so obvious that an individual isn't an individual animal, because often it is. In some contexts it certainly is. Certainly, Your Honor. As you emphasized, in the context that can be the case. For instance, if there's a contrast between an individual and a group, or even in a statute, not that the plaintiffs have identified one, but it's theoretically possible that Congress could have crafted or could craft such a statute. But to my knowledge there isn't even anything in the Animal Welfare Act that uses the term individual with respect to an animal. And given that we were talking about the FOIA, which is a government-wide statute, there's no reason to try to read in the purposes of the Animal Welfare Act here. That would be at odds with the notion that the FOIA is a government-wide statute and there are other interests. If the plaintiff's position prevailed, it wouldn't necessarily be limited to USDA and APHIS. It could also apply to Defense Department statutes. The plaintiffs could make that argument with respect to the activities that they want to know about concerning animals, and it would open up a government-wide Pandora's box. So, again, I stress that there's nothing in FOIA. It's the legislative history, other federal statutes, the case law, that supports the plaintiff's reading of the term individual in this case. So unless there are further questions, I urge for affirmance. Thank you, Your Honor. So a few points on rebuttal. Of course, there are numerous instances in which courts have used the word individual to refer to animals and which agencies have used the word to refer to animals, and its absence in the statutory scheme, I think, is not significant. In context of the Animal Welfare Act, the USDA itself uses the word individual to refer to animals. Their regulations refer to chimpanzees as compatible individuals. We cite examples in our brief in the endangered species context. For example, Idaho Sporting Congress v. Rittenhouse, where the Ninth Circuit referred to palliated woodpeckers as individuals. And so within those statutory schemes, animals are talked about in common parlance as individuals. That the statute doesn't refer to them that way is not particularly significant. Given that the rule of statutory construction and the rule that the Supreme Court applied in the Muhammad case, the methodology applied in the Muhammad case, is to start with the plain language of the statute as used in common parlance. And there the court, of course, determined that individual didn't include organizations because nobody, the court said it would hazard to guess, referred to organizations as individuals in common parlance. And yet when it comes to animals, we do. Even the district court said that one might refer to their dog as quite an individual. And so given that the rule where a statute lacks a definition is to look to common parlance, not to look at other statutes, not to look at the general statutory scheme, not to look at other statutes like the APA, but to look at common parlance, and given that common parlance includes animals, I think the inescapable conclusion should be that the expedited processing provision should protect animals. The USDA is charged with protecting these animals when it has records that might save their life and it refuses to produce them. That's the kind of injury that I think Congress sought to protect by allowing expedited processing in cases involving individuals, which includes non-human animals. Thank you. I thank both sides for their arguments.
judges: Tashima, W. Fletcher, Berzon